**Commonwealth of Massachusetts**
ESSEX SUPERIOR COURT
Case Summary
Civil Docket

# ESCV2011-01783
## Viera v Wells Fargo Bank NA

| | | | |
|---|---|---|---|
| **File Date** | 09/21/2011 | **Status** | Needs review for service (acneserv) |
| **Status Date** | 09/21/2011 | **Session** | C - Civil-CtRm 1 (Lawrence) |
| **Origin** | 1 - Complaint | **Case Type** | D01 - Specific performance of contract |
| **Track** | A - Average track | **Lead Case** | |
| | | **Jury Trial** | Yes |

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| **Served By** | | | | | 09/10/2013 | | | |
| **Filed By** | 12/20/2011 | 01/19/2012 | 02/18/2012 | 12/14/2012 | | 11/09/2013 | | 09/05/2014 |
| **Heard By** | | | | | | | 03/09/2014 | |

### PARTIES

**Plaintiff**
Donna Viera
Saugus, MA 01906
Active 09/21/2011

**Private Counsel 672665**
Josef C Culik
Culik Law PC
18 Commerce ST., Ste. 2850
Woburn, MA 01801
Phone: 800-962-9570
Fax: 978-910-0247
Active 09/21/2011 Notify

**Defendant**
Wells Fargo Bank NA
Sioux Falls, SD 57104
Served: 09/22/2011
Served (answr pending) 09/26/2011

**Private Counsel 671383**
Jeffrey S Patterson
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
30th Floor
Boston, MA 02109-2127
Phone: 617-573-4700
Fax: 617-573-4710
Active 10/11/2011 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 09/21/2011 | 1.0 | Complaint & civil action cover sheet filed |
| 09/21/2011 | | Origin 1, Type D01, Track A. |
| 09/21/2011 | 2.0 | Plaintiff's Emergency ex parte MOTION for a Short Order of Notice |
| 09/21/2011 | 3.0 | Plaintiff Donna Viera's MOTION for appointment of special process server name |
| 09/21/2011 | 4.0 | Plaintiff's Motion for A Preliminary Injunction |
| 09/21/2011 | | # 4 Notice ORDER issued, hereon returnable at the on 10/4/2011 at Lawrence Superior Court |
| 09/21/2011 | | Motion #3 ALLOWED (Lowy, Justice) Notices mailed 9/21/2011 |
| 09/29/2011 | 5.0 | Affidavit of compliance with long-arm statute with proof of service on out of state defendant Wells Fargo Bank NA |
| 10/11/2011 | 6.0 | Notice for Removal to the United States District Court filed by Wells Fargo Bank NA |

A TRUE COPY ATTEST

*[signature]*
DEPUTY ASST. CLERK

### EVENTS

**Commonwealth of Massachusetts**
**ESSEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# ESCV2011-01783
## Viera v Wells Fargo Bank NA

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 10/04/2011 | Civil-CtRm 1 (Lawrence) | Motion/Hearing: order of notice hearing cancelled due to filing of notice of removal | Event canceled not re-scheduled |
| 12/23/2011 | Civil-CtRm 1 (Lawrence) | Status: Clerk Follow UP service | |

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT

*11 - 1783*

ESSEX, ss.

DONNA M. VIERA

    Plaintiff

Civil Action No.

v.

WELLS FARGO BANK, N.A.

    Defendant

## VERIFIED COMPLAINT AND JURY DEMAND

### Summary

1.     Plaintiff-homeowner, Donna Viera, fell behind on her mortgage payments after she closed her business that she owned and operated for over thirty years. She then applied to her mortgage servicer, Wells Fargo, for a loan modification under the HAMP program. She was offered a loan modification with a four-month trial period under which, if she made four monthly payments on time, she would receive a permanent loan modification. She made her trial payments as requested by Wells Fargo, but Wells Fargo has failed to provide a permanent loan modification that was valid under the HAMP guidelines, and instead is foreclosing on her home. Because Wells Fargo has willfully and knowingly refused to address the issue, and has instead scheduled the foreclosure of her home, Viera is now left with no choice and must file this action against Wells Fargo for breach of contract, violation of the covenant of good faith and fair dealing, promissory estoppel, and violation of G.L. c. 93A.

A TRUE COPY, ATTEST

*[signature]*

DEPUTY ASST. CLERK

1

## Parties

2.      Donna Viera ("Viera" or "Plaintiff") is a natural person residing at 9 Hesper Street, Saugus, Essex County, Massachusetts.

3.      Wells Fargo Bank, N.A. ("Wells Fargo") is a nationally chartered bank with principal offices at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104. Wells Fargo regularly does business in Massachusetts. Wells Fargo is in the business of servicing and originating mortgage loans.

## Facts and Background
### The Home Affordable Modification Program

4.      To avert the ongoing national foreclosure crisis, and to preserve the American tradition of homeownership, the U.S. Department of the Treasury established the federal Home Affordable Modification Program ("HAMP") in March 2009.

5.      HAMP was created pursuant to the Emergency Economic Stabilization Act of 2008, §§ 101 and 109, as amended by the American Recovery and Reinvestment Act of 2009, § 7002.

6.      The purpose of HAMP is to modify the mortgages on principal residences of eligible homeowners by reducing their monthly payments of principal, interest, taxes, and insurance to 31% of their gross monthly income. *See* Fannie Mae Single-Family Servicer Guide, § 610.03.06.

7.      This is accomplished by capitalizing the arrears, reducing the homeowner's interest rate, extending the term of the mortgage, or deferring part of the principal

balance into a non-interest bearing payment due upon refinancing or selling the house. *See* Fannie Mae Single-Family Servicer Guide, § 610.03.06.

8.    Homeowners are eligible to apply for HAMP if the house is the homeowner's principal residence, the mortgage was originated prior to January 1, 2009, and the principal balance of the mortgage is less than $729,000. *See* Fannie Mae Single-Family Servicer Guide, § 610.01.

9.    The application process is as follows.

10.    First, the homeowner sends in a financial package of information, including proof of income, bank statements, and other documents. Then, within 30 days, the servicer is required to evaluate the application and provide a trial modification, or else deny the homeowner. *See* Fannie Mae Single-Family Servicing Guide, § 610.03.05.

11.    If the homeowner is approved for a trial modification agreement, or Trial Period Plan ("TPP"), an agreement is sent out for the homeowner describing the terms of the TPP.

12.    The TPP consists of three or four monthly payments in the estimated modified amount. *See* Fannie Mae Single-Family Servicer Guide, § 610.04.07.

13.    After the homeowner makes three or four monthly payments, the servicer must send out a permanent loan modification agreement. *See* Fannie Mae Single-Family Servicer Guide, § 610.04.07.

14.    HAMP guidelines prohibit mortgage servicers from engaging in a variety of unfair practices in connection with a loan modification, including but not limited to:

    a.    Referring a loan to foreclosure while a homeowner is in a TPP. *See* Fannie Mae Single-Family Servicer Guide, § 610.04.04 ("To ensure that a borrower currently at risk of foreclosure has the opportunity to apply for HAMP,

3

servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in HAMP has been made.");

b. Re-requesting financial documentation before providing the permanent loan modification. *See* Supplemental Directive 09-07, p. 2, available online at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0907.pdf

c. Making duplicative requests for documentation the servicer already has in its possession. Se*e* Supp. Dir. 10-02, p. 4;

d. Taking longer than three months to provide a permanent loan modification after a homeowner has entered into a trial loan modification. *See* Fannie Mae Single-Family Servicer Guide, § 610.04.07;

e. Any other unfair and deceptive acts and practices. *See* Fannie Mae Single-Family Servicer Guide, § 610.03.10.

Viera's Loan Modification

15.     Viera is a homeowner residing in Saugus, Massachusetts.

16.     Viera purchased her home in 2002.

17.     In 2007, Viera refinanced her mortgage with a loan from EverHome Mortgage Company in the amount of $185,000, secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc.

18.     On information and belief, an assignment purporting to assign Viera's mortgage to Wells Fargo Bank, N.A. from Mortgage Electronic Registration Systems, Inc. was recorded in the Essex County Registry of Deeds in April 2011.

4

19.     In 2009, Viera began to fall behind on her mortgage after closing her business of thirty years. The loss of her business left her in severe financial difficulties.

20.     On September 16, 2009, Viera and Wells Fargo entered into a written agreement ("the Viera TPP"). (**Exhibit A.**)

21.     Under the terms of the Viera TPP, Viera promised, among other things, to make four monthly payments (the "Trial Payments") to Wells Fargo in the amount of $980.84 by November 1, 2009, December 1, 2009, January 1, 2010, and February 1, 2010.

22.     In return, Wells Fargo promised that after the four Trial Payments were timely made, it would permanently modify Viera's mortgage, lowering her monthly payments.

23.     Specifically, Wells Fargo and Viera agreed in Section 3 of the Viera TPP:

> .... If I comply with the requirements in Section 2 [to make payments] and my representations in Section 1 [to, among other things, obtain credit counseling] continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents ....

(**Exhibit A.**)

24.     Viera had already been qualified because HAMP guidelines require eligibility to be determined *before* the Trial Payments offer is sent. *See* Frequently Asked Questions – Servicing Guide Announcement 09-05R: Home Affordable Modification, Q2314, available at https://www.efanniemae.com/sf/guides/ssg/relatedservicinginfo/pdf/hampfaqs.pdf.

25.     Wells Fargo also promised that it would not foreclose on Viera's home if she timely made her Trial Payments.

26.     Specifically, Wells Fargo and Viera agreed in Section 2.B of the Viera TPP:

> Except as set forth in Section 2.C below [addressing foreclosures in Georgia, Hawaii, Missouri, and Virginia], the Lender [Wells Fargo] will suspend any scheduled foreclosure sale, provided I continue to meet my obligations under the Plan ....

(Exhibit A.)

27.　Viera made her four Trial Payments to Wells Fargo as promised. In fact, Viera continued to make Trial Payments to Wells Fargo through July 2010.

28.　Viera complied in all material respects with all terms of the Viera TPP.

29.　Wells Fargo, however, did not comply with the terms of the Viera TPP with Viera and materially breached it.

30.　When Wells Fargo finally provided Viera with a permanent modification agreement on July 13, 2010, the payment amount had increased by over $450 per month to $1,439.16 per month. This payment amount was almost the same as her previous, unaffordable mortgage payment.

31.　Wells Fargo commenced foreclosure on the home of Viera's after she sent in her four Trial Payments.

32.　Among other things, Wells Fargo filed a complaint for authority to foreclose on Viera's home under the Servicemembers Civil Relief Act in the Land Court Department of the Trial Court for the Commonwealth of Massachusetts, case no. 11 MISC 447659, on May 25, 2011.

33.　Wells Fargo has also scheduled the foreclosure sale of Viera's home for October 5, 2011 at 12:00 p.m.

34.　Wells Fargo is proceeding with the foreclosure of Viera's home despite being prohibited from doing so under the terms of the Viera TPP.

35.   Viera is able to afford to make mortgage payments in the amount specified by her Trial Agreement with Wells Fargo.

## Count I:
### Breach of Contract

36.   The allegations in the preceding paragraphs are hereby adopted by reference.

37.   Breach of contract consists of five elements: (1) an agreement; (2) for valid consideration; (3) performance by the plaintiff; (4) breach by the defendant; and (5) damage to the plaintiff. *Singarella v. City of Boston*, 342 Mass. 385, 173 N.E.2d 290 (1961).

38.   Viera has an agreement with Wells Fargo. (**Exhibit A.**) The agreement, the Viera TPP, is supported by valid consideration. Viera promises, among other things:

   a.   To make four payments to Wells Fargo in the amount $980.84 by November 1, 2009, December 1, 2009, January 1, 2010, and February 1, 2010;

   b.   That she lives in the home as her principal residence; and

   c.   To obtain credit counseling if Wells Fargo requests her to do so.

39.   Viera performed her obligations under the Viera TPP in all material respects.

40.   Under the Viera TPP, if Viera performed her promises, Wells Fargo promises in return to provide her with a loan modification agreement that will enable her to avoid foreclosure and reinstate her loan with lower payments. (**Exhibit A**, Section 3.)

41.   Wells Fargo, however, breached the Viera TPP. Wells Fargo failed to send a loan modification agreement that reinstated her loan with lower payments.

42.     Furthermore, Wells Fargo initiated foreclosure against Viera, and has the auction of her home scheduled for October 5, 2011.

43.     As a result of Wells Fargo's breach, Viera has suffered damages including but not limited to being in imminent danger of foreclosure, interest accumulation, court costs, attorney's fees, and deprivation of a loan modification agreement that would have saved her thousands of dollars.

## Count II:
## Good Faith and Fair Dealing

44.     The allegations in the preceding paragraphs are hereby adopted by reference.

45.     In every contract there is an implied covenant of good faith and fair dealing. "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004).

46.     Wells Fargo failed to honor the Viera TPP with Viera. It never provided her with a permanent loan modification agreement that reinstated her loan with lower payments, as promised, and failed to suspend the foreclosure proceedings against her.

47.     Wells Fargo's actions violated the covenant of good faith and fair dealing under the Viera TPP.

48.     As a result of Wells Fargo's violation of the duty of good faith and fair dealing, Viera has suffered damages including but not limited to being in imminent danger of foreclosure, interest accumulation, court costs, attorney's fees, and deprivation of a loan modification agreement that would have saved her thousands of dollars.

## Count III:
### Promissory Estoppel

49.     The allegations in the preceding paragraphs are hereby adopted by reference.

50.     Promissory estoppel consists of three elements: (1) that the promisor made a promise which he reasonably should expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Loranger Const. Corp. v. E. F. Hauserman Co.*, 6 Mass. App. Ct. 152, 374 N.E.2d 306 (1978), *judgment aff'd* 376 Mass. 757, 384 N.E. 2d 176 (1978).

51.     Wells Fargo promised Viera that if she complied with the terms of the Viera TPP, it would provide her with a permanent loan modification agreement.

52.     Wells Fargo's promise in the preceding paragraph was intended to induce Viera to fulfill her promises in the Viera TPP she signed.

53.     In fact, Viera did fulfill all her promises in the agreement, making her four payments and complying materially with all other obligations imposed on her under it.

54.     Wells Fargo has failed to fulfill its promises in the Viera TPP, by offering a permanent modification that did not decrease her unaffordable mortgage payments and is not valid under the HAMP guidelines.

55.     Injustice, in the form of the wrongful foreclosure of Viera's home, would occur if the Court did not require Wells Fargo to keep its promise under the Viera TPP.

56.     As a result of Wells Fargo's actions, Viera has suffered damages including but not limited to being in imminent danger of foreclosure, interest accumulation, court

costs, attorney's fees, and deprivation of a loan modification agreement that would have saved her thousands of dollars.

## Count IV:
### Consumer Protection Act, G.L. c. 93A

57.    The allegations in the preceding paragraphs are hereby adopted by reference.

58.    Wells Fargo is engaged in trade or commerce in Massachusetts by engaging in banking activity and servicing residential mortgages, including Viera's mortgage.

59.    Viera is not entitled to file a claim under G.L. c. 93A, § 11 because she files this action as consumer homeowners who is not engaged in "trade" or "commerce" as defined under G.L. c. 93A, § 1(b).

60.    Wells Fargo engaged in unfair and deceptive acts or practices with respect to Viera, as described throughout this Complaint.

61.    Viera mailed a demand for relief to Wells Fargo on February 14, 2011, describing the unfair practices it committed, her damages, and requesting an offer of settlement. (**Exhibit B.**)

62.    Wells Fargo failed to respond to Viera's demand letter, thereby refusing to make a reasonable offer of settlement.

63.    Viera has suffered damages including but not limited to being in imminent danger of foreclosure, interest accumulation, court costs, attorney's fees, and deprivation of a loan modification agreement that would have saved her thousands of dollars.

## Request for Relief

WHEREFORE, Viera requests judgment in her favor and against Wells Fargo, as well as the following relief:

a) Preliminary and permanent injunctive relief restraining the foreclosure of her home by Wells Fargo;

b) An award in her favor of actual and compensatory damages;

c) Trebled damages for Wells Fargo's willful and knowing violation of G.L. c. 93A;

d) An order that Wells Fargo perform its contractual obligation to provide Viera with a permanent loan modification;

e) An order that Wells Fargo is obligated under the doctrine of promissory estoppel to provide Viera with a permanent loan modification;

f) A judgment that Wells Fargo violated its duty of good faith and fair dealing;

g) Costs, interest, and reasonable attorney's fees; and

h) All other relief to which she is entitled at law or in equity.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff,
Donna M. Viera,
By counsel,

Josef C. Culik (BBO #672665)
Culik Law P.C.
18 Commerce Way, Suite 2850
Woburn, MA 01801
Tel  (800) 962-9570
Fax (781) 780-2515
josef@culiklaw.com

September 21, 2011

## VERIFICATION OF DONNA M. VIERA

On September 21, 2011, I, Donna M. Viera, having personal knowledge of the facts stated above, unless stated under information and belief, hereby swear under the pains and penalties of perjury that those facts are true and accurate, and that any documents attached hereto are true, accurate copies of that which they are described to be.

Donna M. Viera

13





COUNSELING

 **FannieMae** **HELPING YOU STAY IN YOUR HOME.**  **MAKING HOME AFFORDABLE**

*You may be able to make your payments more affordable.*
### Act now to get the help you need!



*Mathew*

**September 16, 2009**

Donna M Viera
9 Hesper Street
Saugus, MA 1906

> **Loan #:** 708-0258308444
> **Property Address:** 9 Hesper Street  Saugus, MA 1906

Dear Donna M Viera :

You did it! By entering into a Home Affordable Modification Trial Period Plan you have taken the first step toward making your payment more affordable.  We want to remind you that when you signed your Trial Period Plan, you agreed to work with a HUD-approved housing counseling agency.  The service provided by the housing counseling agency is **FREE.** Counselors will work with you to create a household budget and develop an action plan to reduce your household debts. You can also count on your housing counselor to provide you with support during the loan modification process.

Your next step is to choose from the following housing counseling options:

A.  Select a HUD approved housing counseling agency by going to this website address: http://www.hud.gov/offices/hsg/sfh/hcc/fc/. The available agencies are listed by state and can provide you with either in-person counseling or counseling by phone.

B.  Or, select counseling by phone through the HOPE Hotline by calling 1-888-995-HOPE. This is an on-demand counseling service that is available 24-hours a day/7-days a week. The HOPE Hotline is available in Spanish or English (other languages are available on request).

Whichever option you select, the housing counseling services will be made available at NO COST TO YOU. Remember, it is **your responsibility** to contact one of these counseling agencies. It is also a requirement of your Trial Period Plan.

If you have questions about this requirement, please contact us at 1-800-416-1472.

Sincerely,


Wells Fargo Home Mortgage


The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, Fannie Mae (the owner of your loan), your servicer, and the Federal Government are working to offer you options to help you stay in your home.

C1SL-309-02-8

**HELPING YOU STAY IN YOUR HOME.**   MAKING  AFFORDABLE



*Act now to get the help you need!*

September 16, 2009

Donna M Viera

9  Hesper Street
Saugus, MA 1906

**Loan #:** 0258308444
**Property Address:** 9 Hesper Street   Saugus, MA 1906

Dear Donna M Viera

**You may qualify for a Home Affordable Modification Trial Period Plan – a way to make your payment more affordable.**

We have enclosed a customized Home Affordable Modification Trial Period Plan ("*Trial Period Plan*").  If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure.

## STEP 1   PROVIDE THE INFO WE NEED TO HELP YOU

Detailed instructions on what you need to do to take advantage of this offer are set forth on the enclosed document entitled "Complete Your Checklist." Generally, you will need to:

- *Explain the financial hardship that makes it difficult for you to pay your mortgage loan using the Hardship Affidavit (enclosed).*
- *Submit the required documentation of your income.*
- *Make timely monthly trial period payments.*

The monthly trial period payments are based on the income information that you previously provided to us. They are also our estimate of what your payment will be IF we are able to modify your loan under the terms of the program.  If your income documentation does not support the income amount that you previously provided in our discussions, two scenarios can occur:

1) Your monthly payment under the Trial Period Plan may change
2) You may not qualify for this loan modification program

If you do not qualify for a loan modification, we will work with you to explore other options available to help you keep your home or ease your transition to a new home.

## STEP 2   LET US KNOW THAT YOU ACCEPT THIS OFFER

Please let us know no later than 11/01/09 that you accept the Trial Period Plan. Now is the time to act. We are ready to help you. Please take the steps outlined on the enclosed document "Complete Your Checklist."  If you have any questions, please contact us at (800) 416-1472.

Sincerely,
Ben Windust
Senior Vice President

This communication is an attempt to collect a debt and any information obtained will be used for that purpose.  However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt and, this company has a security interest in the property and will only exercise its rights as against the property.

With respect to loans located in the State of California, the state Rosenthal Fair Debt Collection Practices ACT and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, Fannie Mae (the owner of your loan), your servicer, and the Federal Government are working to offer you options to help you stay in your home.

*Attachments:  Complete Your Checklist, Important Program Info, Frequently Asked Questions, Two copies of the Trial Period Plan, Hardship Affidavit, and IRS Form 4506-T*

Investor Loan # <u>1703797328</u>

# HOME AFFORDABLE MODIFICATION PROGRAM
## LOAN TRIAL PERIOD
### (Step One of Two-Step Documentation Process)

Loan Trial Period Effective Date: 11/01/2009
Borrower ("I")[2]: Donna M Viera
Lender: Wells Fargo Home Mortgage
Date of first lien Security Instrument and Note: 4/9/2007
Loan Number: 708-0258308444
Property Address: 9 Hesper Street  Saugus, MA 1906

If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan. I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.  **My Representations.** I certify, represent to Lender and agree:

    A.  I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (I) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I am providing or already have provided documentation for all income that I receive (except that I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

    E.  Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    F.  If Lender requires me to obtain credit counseling, I will do so.

    G.  If I have been discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Plan. I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as necessary, to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable.

---

[2] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

2.  **The Loan Trial Period**.  On or before each of the following due dates, I will pay the Lender the amount set forth below $980.84, which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $299.15.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $980.84 | 11/01/2009 |
| 2 | $980.84 | 12/01/2009 |
| 3 | $980.84 | 01/01/2010 |
| 4 | $980.84 | 02/01/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period 11/1/2009-2/1/2010 commencing on 11/1/2009 and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due 3/1/2010 or (ii) termination of this Plan, I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Plan;

B.  Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C.  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.  The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.  If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan. If under the Lender's procedures, title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received acceptable title endorsement(s) and/or subordination agreement(s) from other lien holders, as Lender determines necessary.

3.  **The Modification**.  I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount.  If I comply with the

requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

4.   **Additional Agreements**. I agree to the following:

A.   That, unless a borrower or co-borrower is deceased, all persons who signed the Loan Documents have signed this Plan.

B.   To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.   That this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D.   That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.   Notwithstanding anything herein to the contrary, if my final two trial period payments are received by Wells Fargo Home Mortgage after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"). I agree to abide by all terms and provisions of this Trial Period during the additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $980.84 no more than 30 days after the last due date listed in the chart in Section 2 above.

In Witness Whereof, the Lender and I have executed this Plan.

Wells Fargo Home Mortgage
Lender

_____ (Seal)
Borrower

By: _____
12/22/09
Date

1.0-06-09
Date

_____ (Seal)
Borrower

_____
Date

may not harass you by using threats or violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not received personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collections activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

 This is the information we need to help you modify your mortgage payments.

# Act Now!

**To accept this offer,** and see if you qualify for a Home Affordable Modification, send the 5 items listed below to 1000 Blue Gentian Rd. Ste 300, MAC Code 9999-01N, Eagan, MN 55121 no later than 11/01/2009. Use the return envelope provided for your convenience.

**1.** Two copies of the enclosed Trial Period Plan signed by all borrowers,

**2.** Your first month's trial period payment set forth in the Trial Period Plan.

**3.** The enclosed Hardship Affidavit completed and signed by all borrowers (no notary required),

**4.** A signed and dated copy of the IRS Form 4506-T (Request for Transcript of Tax Return) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers), and

**5.** Documentation to verify all of the income of each borrower (including any alimony or child support that you choose to rely upon to qualify). This documentation should include:

> **For each borrower who is a salaried employee:**
> ☐ Copy of the most recent filed federal tax return with all schedules; and
> ☐ Copy of the two most recent pay stubs.
>
> **For each borrower who is self-employed:**
> ☐ Copy of the most recent filed federal tax return with all schedules, and
> ☐ Copy of the most recent quarterly or year-to-date profit/loss statement.
>
> **For each borrower who has income such as social security, disability or death benefits, pension, public assistance, or unemployment:**
> ☐ Copy of most recent federal tax return with all schedules and W-2 or copies of two most recent bank statements.
> ☐ Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit. Social security, disability, death or pension benefits must continue for at least 3 years to be considered qualifying income under this program. Public assistance or unemployment benefits must continue for at least 9 months to be considered qualifying income under this program.
>
> **For each borrower who is relying on alimony or child support as qualifying income:**
> ☐ Copy of divorce decree, separation agreement or other written agreement or decree that states the amount of the alimony or child support and period of time over which it will be received. Payments must continue for at least 3 years to be considered qualifying income under this program.
> ☐ Proof of full, regular and timely payments; for example deposit slips, bank statements, court verification or filed federal tax return with all schedules.
>
> **For each borrower who has rental income:**
> ☐ Copies of most recent two years filed federal tax returns with all schedules, including Schedule E— Supplement Income and Loss. Rental income for qualifying purposes will be 75% of the gross rent.

If you have other types of income, cannot locate required documents, or have questions about the documentation required, please contact us at (800) 416-1472.

**You must send in both signed copies of the Trial Period Plan, all required income documentation, and your first trial period payment by this date 11/01/2009. If you cannot provide the documentation within the time frame provided, please contact us to request an extension of time to gather your documents.**

Keep a copy of all documents for your records. Don't send original income documentation as copies are acceptable.

**Your remaining trial period payments set forth in the Trial Period Plan will be due on or before 12/1/2009, 1/1/2010, and 2/1/2010. These payments should be sent instead of, not in addition to, your normal monthly mortgage payment.** If the trial period payments are made in amounts different from the amount stated your loan may not be modified.

 **FREQUENTLY ASKED QUESTIONS** You've got questions. We've got answers.

**Q. How long will it take to process my modification request and determine if I qualify for the program?**

It may take up to 30 days for us to receive and review your documents. We will process your modification request as quickly as possible. Please note, however, that your modification will not be effective unless you meet all of the applicable conditions, including making all trial period payments.

**Q. What if my trial period payment is less than the payment I currently owe on my loan?**

We will add the difference between the monthly payment that you currently owe on your loan and the trial period payment to your loan balance and allow you to pay it over the remainder of the modified loan term.

**Q. What do you do with my first trial period payment if I do not qualify for the program?**

Your first trial payment will be applied to your existing loan in accordance with the terms of your loan documents. If you don't qualify for the program, we will help you evaluate other options to help you keep your home or ease your transition to a new home.

**Q. Will a foreclosure occur if I participate in the Home Affordable Modification program?**

As long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started. If you fail to comply with the terms of the Trial Period Plan and do not make other arrangements, your loan will be enforced according to its original terms, which could include foreclosure.

**Q. What happens to my trial period payments if I do not comply with the terms of the Trial Period Plan?**

Your trial period payments will be applied to your existing loan according to the terms of your loan documents.

**Q. If I get a Home Affordable Modification, can my modified loan terms ever revert to the original loan terms?**

No. This is one of the advantages of the Home Affordable Modification program. Once your loan is modified, the new terms stay in place for the remainder of your loan.

**Q. Do all borrowers have to sign the Trial Period Plan and other documents?**

Unless a borrower or co-borrower is deceased, all borrowers who signed the original loan documents or their duly authorized representative(s) must sign the Trial Period Plan, the Modification Agreement and all other required modification documents. Contact your servicer if it would be difficult or impossible for you to comply with this requirement.

**Q. Could my trial period payment be more than my current payment?**

Yes. For example, if your current payment does not include an escrow payment and you are now required to make monthly escrow payments, your trial period payment could be higher than your current payment. Note, however, that the increase in your payment under these circumstances would be offset by other tax and insurance bills you would no longer have to pay directly as we will pay those for you out of your escrow account.

## IMPORTANT INFORMATION ABOUT YOUR TRIAL PERIOD PLAN

*Review of your loan is underway. Remember: you need to return the completed, signed package and required documents as soon as possible.*

**Important Escrow Information:**

- Once we receive this signed Trial Period Plan you will be required to have an escrow account to pay all future property taxes, and insurance premiums. Having an escrow account is a condition of the Home Affordable Modification program.
- If you have delinquent property taxes or insurance premiums, we will make those payments including all interest and penalties. We will then include those amounts in your new or existing escrow account.
- If you are currently responsible for paying your own property tax and/or insurance premiums, please continue to make those payments as usual until you return this signed package.

**Important Payment Information:**

- If your payments are being electronically withdrawn, whether by us or any other provider, it is your responsibility have withdrawals stopped if and when it is appropriate, but this would most likely be when you move from your current payment to a trial period payment.
- If you need Wells Fargo to cancel your withdrawals, please call us at 1-866-386-8519 (Monday-Friday 6 a.m. to 10 pm CST and Saturday 8 a.m. to 2 p.m.) at least 5 business days prior to the date you wish to have the withdrawals stopped.
- If you would like to use our Wells Fargo Easy Pay process to make your trial period payments by phone, please contact us at 1-866-412-6942.

Note: You will receive a form to re-start automatic, on-going electronic withdrawals when your loan is formally modified at the end of your trial period.

**Please see payment coupons attached for you convenience**

*PAYMENT PAGE*

*CALL - 866 - 386 - 8519*

*AFTER OCT 14th*

*(TO STOP DIRECT DEP.)*

If you cannot afford the trial period payments shown above, but want to remain in your home, or if you want to leave your home and avoid foreclosure, please call us at (800) 416-1472. We may be able to help you.

 Here's what you need to know about the Home Affordable Modification program.

**NO FEES.** There are no fees under the Home Affordable Modification program.

**TRIAL PERIOD PLAN/MODIFICATION AGREEMENT.** The Trial Period Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement ("Modification Agreement"), which will reflect the terms of your modified loan. In addition to successfully completing the trial period, you will need to sign and promptly return to us both copies of the Modification Agreement or your loan can not be modified.

**NEW PRINCIPAL BALANCE.** Past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance (the "Past Due Arrearage Amount"). **If you fulfill the terms of the trial period including, but not limited to, making the trial period payments, we will waive ALL unpaid late charges at the end of the trial period.**

**ESTIMATED MONTHLY PAYMENT.** At this time, we are not able to calculate precisely the Past Due Arrearage Amount or the amount of the modified loan payment that will be due after successful completion of the trial period. However, based on information we currently have, your trial period payment should be close to your modified loan payment. As we near the end of the trial period, we will calculate any past due amount to determine your new permanent monthly payment and other modified loan terms.

**[ESCROW ACCOUNT.** The terms of your Trial Period Plan and your Modification Agreement will require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Your current loan may also require escrows. If it does not, the previous waiver of escrows is cancelled under your Trial Period Plan. *Wells Fargo Home Mortgage* will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that the servicer must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be $299.15.

**[ESCROW SHORTAGE.** Due to the timing of your tax and insurance payments, we have determined that there will be a shortage of funds in your escrow account in the amount of $0.00. You may pay this amount over a 5-year (60 months) period. This monthly payment has already been included in the monthly escrow payment stated above. **If you wish to pay the total shortage now in a lump sum, please contact us at (800) 416-1472. [Wells Fargo Home Mortgage may include alternative provisions to deal with an escrow shortage in accordance with applicable law.]**

**BORROWER INCENTIVE.** If your monthly mortgage payment (principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's association fees, as applicable, but excluding mortgage insurance) is reduced through the Home Affordable Modification Program by six percent or more and if you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to the lesser of: (i) $83.33 or (ii) one-half of the reduction in your monthly mortgage payment. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the Trial Period Plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

**CREDIT COUNSELING.** If you have very high levels of debt you will be required to obtain credit counseling under the Home Affordable Modification program.

**CREDIT REPORTING.** During the trial period, we will report your loan as delinquent to the credit reporting agencies even if you make your trial period payments on time. However, after your loan is modified, we will only report the loan as delinquent if the modified payment is not received in a timely manner.

CULIKLAW.COM

**CULIK LAW** PC | Champion Your Rights®

100 CUMMINGS CENTER, SUITE 107K
BEVERLY, MASSACHUSETTS 01915

P 978 910 0248 | 800 962 9570
F 978 910 0247

February 14, 2011

<u>VIA CERTIFIED MAIL NO. 7160 3901 9848 9516 4874</u>

John Stumpf, Chairman & CEO
Wells Fargo Bank, N.A.
101 N. Phillips Avenue
Sioux Falls, SD 57104



Certified Article Number

7160 3901 9848 9516 4874

SENDERS RECORD

**Re:**   **Demand for relief pursuant to Massachusetts Consumer Protection Act for failure to comply with loan modification guidelines.**

Mr. Stumpf:

I represent Ms. Donna M. Viera of 9 Hesper St., Saugus, MA 01906. Viera's mortgage is serviced by Wells Fargo and has account number 0258308444. This is a demand for relief pursuant to the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 9. Within 30 days, you must make a reasonable settlement offer or else you may be liable for costs, attorney's fees, and triple damages. Wells Fargo has violated the guidelines for the Home Affordable Modification Program (HAMP) with regard to Viera's account.

**Background.** Viera has lived in her home since she purchased it in 2002. In 2007 she refinanced her mortgage with a loan in the amount of $185,000 from Everhome Mortgage Company, secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. Wells Fargo purports to be the holder of the note, pursuant to its August 10, 2010 letter to my office, although the Fannie Mae online look-up tool identifies the mortgage as owned by Fannie Mae.

**The Trial Loan Modification.** After the business Viera owned ceased operation, she suffered a permanent decrease in income. She applied to Wells Fargo for a loan modification, and received a HAMP Trial Period Plan on September 16, 2009. During this trial loan modification she was to make four monthly trial payments in the amount of $980.84 in November and December 2009, and January and February 2010. If she made the payments, Wells Fargo promised that it would send her a permanent loan modification agreement. Both Viera and Wells Fargo signed the agreement.

**The Permanent Loan Modification.** Viera did make her four trial payments. Indeed, she made payments through July 2010—five months longer than she was required do. But when Wells Fargo finally provided Viera with a permanent loan modification agreement on July 13, 2010, the payment amount had *increased* by over $450 per month to $1,439.16 per month. This increase was unauthorized by any HAMP guidelines,[1] and was a result, apparently, of Wells Fargo miscalculating her income. In fact, this payment amount was almost the same as her previous, unaffordable mortgage payment. Because of the payment shock from Wells Fargo's mishandling of the modification payment amount, Viera was, predictably, unable to afford to make these increased payments. Wells Fargo canceled the modification offer and commenced foreclosure.

Wells Fargo's violation of HAMP guidelines and its offer of a non-conforming loan modification constitutes a violation of the Massachusetts Consumer Protection Act. As held by courts throughout the country—and especially courts in Massachusetts— violations of the HAMP are actionable under a variety of theories. See Bosque v. Wells Fargo Bank, N.A., No. 10-10311-FDS, 2011 WL 304725, — F. Supp. 2d — (D. Mass. Jan. 26, 2011); Durmic v. J.P. Morgan Chase Bank, NA, No. 10-CV-10380-RGS, 2010 WL 4825632, Slip Copy (D. Mass. Nov. 24, 2010); Speleos v. BAC Home Loans Servicing, L.P., No. 10-11503-NMG, 2010 WL 5174510, — F. Supp. 2d — (D. Mass. Dec. 14, 2010). This conclusion is consistent with the broad prohibition of unfair and deceptive practices under the Massachusetts Consumer Protection Act.

---

[1] HAMP Supplemental Directive 09-01, p.8, requires the permanent modification payment to be no more than 31% of the borrower's gross monthly income.

Although mortgage servicers such as Wells Fargo often reply to demands such as this by claiming that there is no private right of action under HAMP, the Consumer Protection Act provides for a private right of action to Viera. Business practices are actionable so long as they are within the penumbra of a common law, statutory, or other established concept of unfairness. Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 457, 806 N.E.2d 388 (2004), quoting Heller Fin. v. Insurance Co. of N. Am., 410 Mass. 400, 408, 573 N.E.2d 8 (1991). Here, Wells Fargo's breaking of its promise to Viera is both within the statutory scheme under which HAMP was created, and violates established concepts of fairness.

In light of the foregoing, I demand that Wells Fargo provide the following relief:

1. A permanent loan modification agreement, with effective date of February 2010, with payment in the approximate amount of $980.84,

2. Repair to Viera's consumer credit report such that it reflects current payments since February 2010, and

3. Damages, costs and attorney's fees in the amount of $25,000.

Very truly yours,

Josef Culik
Attorney at Law

cc:   Donna M. Viera

| **CIVIL ACTION COVER SHEET** | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. *11-1783* |
|---|---|---|
| | COUNTY OF **ESSEX** | |

| **PLAINTIFF(S)  Donna M. Viera** | **DEFENDANT(S)  Wells Fargo Bank, N.A.** |
|---|---|

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| Josef C. Culik (BBO #672665)<br>Culik Law PC<br>18 Commerce Way, Suite 2850<br>Woburn, MA 01801<br>Tel: 800-962-9570 | |

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)        TRACK | IS THIS A JURY CASE? |
|---|---|---|
| **D01 Specific Performance of Contract - Average Track** | | (•) ] Yes    ( ) ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
  1.  Total hospital expenses                                        $_____
  2.  Total doctor expenses                                          $_____
  3.  Total chiropractic expenses                                    $_____
  4.  Total physical therapy expenses                                $_____
  5.  Total other expenses (describe)                                $_____
                                                         Subtotal  $_____

**FILED**
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX
SEP 21 2011
~~Thomas M. Driscoll Jr.~~
**CLERK**

B.  Documented lost wages and compensation to date                  $_____
C.  Documented property damages to date                             $_____
D.  Reasonably anticipated future medical expenses                  $_____
E.  Reasonably anticipated lost wages and compensation to date      $_____
F.  Other documented items of damages (describe)                    $_____

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

*Loss of benefit of loan modification, foreclosure scheduled for Oct. 5, 2011*

Total $_____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

A TRUE COPY ATTEST

Provide a detailed description of claim(s):

*$35,000*

Violation of agreement to provide loan modification on Plaintiff's mortgage.

TOTAL    $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT
N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record                                        Date:  Sep 21, 2011

A.O.S.C. 3-2007

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT

DONNA M. VIERA

    Plaintiff

v.

WELLS FARGO BANK, N.A.

    Defendant

Civil Action No.

### PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR A SHORT ORDER OF NOTICE

Plaintiff, Donna M. Viera ("Viera") moves the Court for a short order of notice setting a hearing on her accompanying Motion for a Preliminary Injunction for a date on or before <u>October 4, 2011</u>, which is the date before her home is to be foreclosed on by Defendant Wells Fargo Bank., N.A. ("Wells Fargo"). In support of this motion, she states as follows:

1.     Viera has filed a Verified Complaint against her mortgage servicer, Wells Fargo Bank, N.A. ("Wells Fargo") for its failure to honor its legal obligation to provide her with a permanent loan modification related to the mortgage on her house.

2.     Viera successfully completed a four-month trial loan modification, making all her required payments, but Wells Fargo refused to provide the permanent loan modification agreement and instead scheduled the foreclosure sale of her home.

3.     Viera seeks a preliminary injunction restraining the foreclosure before the sale date.


A TRUE COPY, ATTEST

DEPUTY ASST. CLERK

1

WHEREFORE, Viera requests that the Courts schedule a hearing on her Motion for a Preliminary Injunction on or before <u>October 4, 2011</u>.

Respectfully submitted,

Plaintiff,
Donna M. Viera,
By counsel,

Josef C. Culik (BBO #672665)
Culik Law P.C.
18 Commerce Way, Suite 2850
Woburn, MA 01801
Tel  (800) 962-9570
Fax (781) 780-2515
josef@culiklaw.com

September 21, 2011

*3*

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                                          SUPERIOR COURT
                                                                        *11 - 1783*

DONNA VIERA

     Plaintiff

v.                                                    Civil Action No.

WELLS FARGO BANK, N.A.

     Defendant

### PLAINTIFF'S MOTION FOR SPECIAL PROCESS SERVER

Pursuant to Mass. R. Civ. P. 4(c), Plaintiff Donna Viera moves the Court for an

Order appointing Humphries & Associates or its designee, who are knowledgeable in the

service of process, as process server in this case. The undersigned swears that to the best of

his knowledge and belief the person to be appointed process server is a Constable who is

experienced in the service of process, is 18 years of age or over, and is a disinterested

party.

                            Respectfully submitted,

                            Attorney for Plaintiff,

A TRUE COPY ATTEST

*Casey Acue*

DEPUTY ASST. CLERK

                            Josef C. Culik (BBO #672665)
                            Culik Law P.C.
                            18 Commerce Way, Suite 2850
                            Woburn, MA 01801
                            Tel  (800) 962-9570
                            Fax (781) 780-2515
                            josef@culiklaw.com

September 21, 2011

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                          SUPERIOR COURT

                                                    11-1783

| |
| --- |
| DONNA M. VIERA |
| Plaintiff |
| v. |
| WELLS FARGO BANK, N.A. |
| Defendant |

Civil Action No.

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### (Memorandum Incorporated)

#### Summary

A preliminary injunction should be ordered restraining the Defendant, Wells

Fargo Bank, N.A., from conducting the foreclosure—set for October 5, 2011—of the

home of the Plaintiff, Donna M. Viera because Viera fulfilled the terms of a trial loan

modification agreement under which she was to be provided with a permanent loan

modification and all foreclosure activity was to cease. Wells Fargo has wrongfully

scheduled the sale and knowingly breached its obligations under the agreement. The

following motion, affidavit, and cited cases show that Viera will succeed on the merits of

her claims for breach of contract, promissory estoppel, violation of the duty of good faith

and fair dealing, and violation of G.L. c. 93A.

## I. Facts

Plaintiff, Donna M. Viera ("Viera") lives in as her principal residence, and owns,

the real property located at 9 Hesper St., Saugus, Essex County, Massachusetts 01906 (the

1

"Home"). **Exhibit B**, Affidavit of Donna M. Viera ("Viera Aff.") ¶ 1. She is currently employed as a Customer Service Supervisor at Whole Foods. (Viera Aff. ¶ 3.) Previously, Viera owned a hair salon for over 30 years, but it was forced to close to the recent economic downturn. (Viera Aff. ¶ 4.)

Viera purchased her Home in 2002 for $265,000. (Viera Aff. ¶ 5.) The deed is recorded in the Essex Registry of Deeds at book 19006, page 150. (Viera Aff. Ex. 1.) In 2007, Viera refinanced the mortgage on her Home with a fixed-interest loan at the rate of 6.25% from EverHome Mortgage Company ("Everhome") in the amount of $185,000. (Viera Aff. ¶ 6 and Ex. 2.) The loan was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Everhome. (Viera Aff. Ex. 3.) Viera's monthly mortgage payment of principal and interest under the loan was $1,184.58 per month. (Viera Aff. ¶ 8 and Ex. 2.) Viera's mortgage was assigned to Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on April 4, 2011. (Viera Aff. ¶ 9 and Ex. 4.) Wells Fargo is also the servicer of Viera's mortgage. (Viera Aff. ¶ 10.)

After Viera fell behind on her mortgage payments in 2009, she contacted Wells Fargo about obtaining a loan modification so that she could resume making her mortgage payment. (Viera Aff. ¶ 11.) Wells Fargo then wrote her a letter dated May 18, 2009, soliciting her to apply for a loan modification, and asking her to submit financial information to be considered for one. (Viera Aff. ¶ 12 and Ex. 5.)

In response to Wells Fargo's offer, Viera provided documentation of her financial situation to Wells Fargo via fax in or around Spring 2009. (Viera Aff. ¶ 13.) Wells Fargo acknowledged her application in writing in a letter dated June 24, 2009. (Viera Aff. ¶ 14

and Ex. 6.) On September 16, 2009, Wells Fargo sent her a trial loan modification, called a trial period plan ("TPP"). (Viera Aff. ¶ 15 and Ex. 7.)

The TPP promised Viera that if she made four payments, in a reduced amount of $980.84, by November 1, 2009, December 1, 2009, January 1, 2010, and February 1, 2010, she would be provided with a permanent loan modification. (Viera Aff. ¶ 16 and Ex. 7.) Viera was aware of Wells Fargo's participation in the federal Home Affordable Modification Program ("HAMP") so she counted on Wells Fargo to keep its promise. (Viera Aff. ¶ 17.) On this understanding, she signed the TPP and sent it back to Wells Fargo as requested. (Viera Aff. ¶ 17.) Viera also made her four payments to Wells Fargo as required under the TPP on or before the dates that were required under it. (Viera Aff. ¶ 18.) She saw that the TPP required her to agree to escrow her mortgage account for taxes and insurance, and to obtain credit counseling if Wells Fargo required her to do so, so she also agreed to do those things. (Viera Aff. ¶ 18.)

But Wells Fargo did not provide Viera with a permanent loan modification as promised after four months. Instead, Wells Fargo did nothing for approximately the next five months. (Viera Aff. ¶ 20.) She repeatedly called Wells Fargo to inquire about the status of her loan modification. Finally, she received a voicemail from a Wells Fargo representative who identified herself as "Laura" from the Wells Fargo HAMP Department informing her that her loan had been approved for a final modification stating:

> Hi Donna, this is Laura [last name garbled] calling from Wells Fargo HAMP Department. I just wanted to let you know that **your trial is being moved to final modification** so within the next couple of weeks here you should receive a call or receive paperwork in regards to finalizing your modification. If you have any questions in the meantime, feel free to give me a call, otherwise—um, or when you receive the documents questions feel free to give me a call. Just wanted to let you know. Hope you're doing well. And, um, we should finish up here within a week or two. Thank you. Bye.

(Viera Aff., attached CD-ROM) (emphasis added). Viera has never received the HAMP modification she was promised. (Viera Aff. ¶ 23.)

Instead, Wells Fargo sent a so-called modification agreement dated July 13, 2010 under which Viera's payment was **increased** by $254.58 per month from her original, unaffordable payment, making the new payment $1,439.16. (Viera Aff. ¶ 24 and Ex. 8.) This was not the offer Viera had been promised, so she never accepted it. (Viera Aff. ¶ 26.)

Since that time, Viera has repeatedly contacted Wells Fargo to request that it keep its promise to her under its TPP. (Viera Aff. ¶ 27.) She has even engaged counsel and resubmitted her financial information, which seemed easier to her than to try to file a civil action against Wells Fargo, a behemoth financial institution with, for all practical purposes, unlimited financial resources. Instead of simply fixing its mistake, however, Wells Fargo has repeatedly denied my requests to provide the loan modification. (Viera Aff. ¶ 28.) Wells Fargo has now set the foreclosure of Viera's home for October 5, 2011. (Viera Aff. ¶ 29 and Ex. 9.)

## II. Standard for Injunctive Relief

The purpose of a preliminary injunction is "only to preserve the status quo while the case is under consideration." *Jet-Line Servs., Inc. v. Selectmen of Stoughton*, 25 Mass. App. Ct. 645, 649-50, 521 N.E.2d 1035 (1988). In determining whether to grant a preliminary injunction, a court must perform the three-part balancing test from *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 616-617 (1980). First, the court evaluates the movant's claim of injury and the likelihood of success on the merits. *Id.* at 617. Second, the court determines whether failing to issue a preliminary injunction would

subject the movant to irreparable injury—losses that cannot be repaired or adequately compensated upon final judgment. *Id.* at 617 and n. 11. Third, "[i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party." *Id.* at 617. In balancing these factors, "[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Id.* The public interest may be a fourth factor weighed by the court, in some instances. *Tri-Nel Mgmt., Inc. v. Bd. of Health of Barnstable*, 433 Mass. 217, 741 N.E.2d 37 (2001); *Planned Parenthood League of Mass., Inc. v. Operation Rescue*, 406 Mass. 701, 715, 550 N.E.2d 1361, 1370 (1990).

### III. Law and Analysis

A.    **First Factor: Likelihood of Success on the Merits**[1]

As has been repeatedly and unanimously held by courts throughout Massachusetts, the actions committed by Wells Fargo in failing to provide Viera with a loan modification: (1) constitute a breach of contract; (2) entitle her to compel Wells Fargo to honor the agreement under the doctrine of promissory estoppel; (3) violate the implied covenant of good faith and fair dealing; and (4) are unfair and deceptive trade practices in violation of G.L. c. 93A. These issues have all been analyzed, and decided in favor of consumer-homeowners, in numerous cases. *See Durmic v. J.P. Morgan Chase Bank, NA,*

---

[1] The major cases cited herein are attached for the Court's ease of reference as **Exhibit A.**

No. 10-CV-10380-RGS, 2010 WL 4825632, Slip Copy (D. Mass. Nov. 24, 2010). *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011); *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, No. 10-md-02193-RWZ, 2011 WL 2637222, Slip Copy (D. Mass. July 6, 2011); *Belyea v. Litton Loan Servicing, LLP*, No. 10-10931-DJC, 2011 WL 2884964, Slip Copy (D. Mass. July 15, 2011); *Stagikas v. Saxon Mortg. Servs., Inc.*, No. 10-40164-FDS, 2011 WL 2652445, — F. Supp. 2d — (D. Mass. July 5, 2011).

1. **Breach of Contract (Count I):** **The TPP was an offer from Wells Fargo, which Viera accepted by making her payments and keeping her promises under it.**

To prove a breach of contract under Massachusetts law, a plaintiff must demonstrate: (1) that the parties reached a valid and binding agreement; (2) that the defendant breached the terms of that agreement; and (3) that the plaintiff suffered damage from the breach. *Michelson v. Digital Financial Services*, 167 F.3d 715 (1st Cir. 1999).

Here, the contract was the TPP, a written agreement between Viera and Wells Fargo. (Viera Aff. Ex. 7.) In examining other homeowners' TPPs in virtually identical cases, courts have said that the TPP "has the appearances of a contract."*Durmic*, 2010 WL 4825632 at *1. Normally, a performance of a pre-existing legal duty cannot, without more, constitute consideration. *In re Lloyd, Carr & Co.*, 617 F.2d 882, 890 (1st Cir. 1980). Such is not the case here—Viera did not simply agree to change her mortgage payment amount. Rather, she agreed to a number of undertakings, including affirming that she would make legal representations about her personal circumstances, agreeing to undergo credit counseling, and agreeing to set up an escrow account for taxes and insurance.

(Viera Aff. Ex. 7, third unnumbered page.) Valid consideration exists if there is legal detriment that entails even the slightest trouble or inconvenience. *See, e.g., Wit v. Commercial Hotel Co.*, 253 Mass. 564, 572, 149 N.E. 609 (1925). "These conditions of the TPP all constitute new legal detriments to plaintiff that flowed from his acceptance of the TPP." *Stagikas*, 2011 WL 2652445, at *5. Viera's promises, therefore, constitute consideration and confirm the existence of a valid, binding, contract between herself and Wells Fargo.

The breach of the contract, the TPP, was by Wells Fargo alone. Viera made all her payments as required for November 2009, December 2009, January 2010, and February 2010. (Viera Aff. ¶ 18.) It was Wells Fargo only who failed to keep the promises in the agreement. Viera's damage, clearly, is her loss of the economic benefit of a loan modification. Therefore, she has shown a breach of contract by Wells Fargo. By reaching this conclusion, this Court would establish itself squarely within the unanimous chorus of courts in Massachusetts that have found the same. *Durmic*, 2010 WL 4825632, at *4; *Bosque*, 762 F. Supp. 2d, at 352-53; *HAMP Litig.*, 2011 WL 2637222, at *4.

2. **Promissory Estoppel (Count II)**: Viera is entitled to Wells Fargo's promises in the TPP under the doctrine of promissory estoppel.

Promissory estoppel requires the plaintiff to prove "all the necessary elements of a contract other than consideration." *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995). "'An essential element under the promissory estoppel theory [that substitutes for the element of consideration] is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation

[to his detriment]." *Id.* at 848, *quoting Pappas Indus. Parks, Inc. v. Psarros*, 24 Mass. App. Ct. 596, 599 (1987).

Here, Viera has shown above that there was consideration for the TPP. But even if there were not consideration (which there was), she would still be entitled to enforce the TPP under the doctrine of promissory estoppel because of Wells Fargo's unambiguous promise that it "will provide [her] with a Loan Modification Agreement ...." (Viera Aff., Ex. 7, third unnumbered page.) Viera's reliance, sending in her four payments and making the promises under the agreement (Viera Aff. ¶¶ 17.18), was reasonable since Wells Fargo was participating in the HAMP program, and had even solicited her to apply for a loan modification. (Viera Aff. ¶ 12 and Ex. 5.) The detriment to Viera was that she lost the economic benefit of the loan modification. Accordingly, Viera can recover under promissory estoppel. *See Durmic*, 2010 WL 4825632, at *5 ("the adequacy of consideration with respect to [the TPP] obviates the need for any further elaboration").

3. **Duty of Good Faith and Fair Dealing (Count III)**: By failing to provide the permanent modification, Wells Fargo violated its duty of good faith and fair dealing.

There is an implied covenant of good faith and fair dealing in every contract in Massachusetts. *TransCanada Power Mktg. Ltd. v. Narragansett Elec. Co.*, 542 F. Supp. 2d 127, 139 (D. Mass. 2008). A defendant may breach the implied covenant without breaching any express term of the contract. *Speakman v. Allmerica Financial Life Ins.*, 367 F.Supp.2d 122, 132 (D. Mass. 2005) (*citing Fortune v. National Cash Register Co.*, 373 Mass. 96, 101, 105, 364 N.E.2d 1251 (1977)). The essential inquiry is whether "the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant

abided by the letter of the contract in the course of performance." *Speakman*, 367

F.Supp.2d, at 132 (*citing Larson v. Larson*, 37 Mass. App. Ct. 106, 110, 636 N.E.2d 1365

(1994)).

Here, Wells Fargo entered into the TPP with Viera under which it promised to

provide her with a permanent loan modification. Then Wells Fargo deprived her of the

benefits of the TPP—the permanent loan modification—and instead initiated foreclosure

on her home. Wells Fargo was repeatedly informed about its breach, but nonetheless

proceeded to foreclosure. (Viera Aff. ¶ 29.) This meets the standard above standard for

whether the Wells Fargo's conduct "conformed to the parties' reasonable understanding"

of the TPP. *Speakman*, 367 F.Supp.2d, at 132.

    4. **Chapter 93A (Count IV)**: Wells Fargo's actions are "unfair" and "deceptive" business practices, which violate G.L. c. 93A.

"[C]hapter 93A was intended to be far more than a pale reflection of existing

statutory and common law rights." *Massachusetts v. H&R Block, Inc.*, No. 08-2474-BLS1,

2008 WL 5975053, (Mass. Super. Nov. 10, 2008), *aff'd* No. 09-P-134, 2009 WL 3460373

(Mass. App. Ct. Oct. 29, 2009). "[A]nalogies between common law claims for breach of

contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A

dispenses with the need to prove many essential elements of those common law claims."

*Nei v. Burley*, 388 Mass. 307, 313, 446 N.E.2d 674, 678 (1983). Conduct "in disregard of

known contractual arrangements" may constitute a violation of Chapter 93A. *Anthony's*

*Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 474, 583 N.E.2d 806, 821 (1991)).

When determining whether a practice is unfair under Chapter 93A, a court should

consider three factors. These are:

(1) "whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;"

(2) "whether it is immoral, unethical, oppressive, or unscrupulous;" and

(3) "whether it causes substantial injury to consumers."

*PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915, 918 (1975), *quoting* 29 Fed. Reg. 8325, 8355 (1964). At least one—but not all—of the above criteria must be met by the practice under question. *Gerli v. G.K. Hall & Co.*, 851 F.2d 452, 454 (1st Cir. 1988). In this case, all three criteria are clearly met.

The facts of Viera's case easily meet all three of these criteria. First, Viera's TPP is within the "penumbra" of the HAMP program, and the knowing violation of the TPP is unethical and unscrupulous. Viera's injury is the imminent foreclosure of her home and loss of the economic benefit of the loan modification. *See Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 263 (D. Mass. 2011) (applying the three factors and concluding that "[1] the regulatory requirements of HAMP form the statutory 'penumbra', [2] a dereliction of duty under the HAMP contract is colorably unethical or unscrupulous (especially in light of the applicant's reasonable expectations), and [3] there is potential substantial injury to an applicant facing foreclosure and/or substantial arrearages."). Accordingly, Viera is likely to succeed on this claim, as well.

A.      **Second Factor: Irreparable Harm**

Real property is inherently unique and its sale is almost always irreparable harm. "It is well-settled law in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land." *Greenfield Country Estates Tenants Ass'n, Inc. v. Deep*, 423 Mass. 81, 88, 666 N.E.2d 988

(1996). By this standard, if Wells Fargo deprives Viera of title to her home through a foreclosure auction, she will be permanently deprived of title to her real property, causing damage that is irreparable. *Id.*

### B.   Third Factor: Balancing of Hardships

Any harm that the Wells Fargo might suffer is at most negligible, since only the status quo will be maintained. In contrast, the harm to Viera is, as described above, irreparable. She will lose title to her home, causing damage that Wells Fargo will be unable to undo and that is not adequately compensable at law through money damages, real property being inherently unique.

### C.   Fourth Factor: Public Interest

The relief Viera now requests, injunctive relief to restrain the sale of her home while this matter is litigated, would promote the public interest because there is a public interest in ensuring that homeowners do not lose their homes unnecessarily. The Massachusetts Attorney General has emphasized that meaningful loan modifications are the cornerstone in addressing the mortgage foreclosure crisis, but that inadequate staffing by the banks has led to ineffective management of call volumes, poor customer service and ultimately in many instances, deficient loan modifications or none at all. *See* Testimony of Massachusetts Attorney General Martha Coakley, Cmte. on Fin. Svcs. Subcmte. on Housing and Community Opportunity, at 7 (May 6, 2009), [2]The U.S. Congress has also stated a clear national policy of foreclosure prevention. *See also* The Helping Families Save Their Homes Act of 2009, Pub. L. 111-12, § 201, 123 Stat. 1639

---

[2] Available http://www.house.gov/apps/list/hearing/financialsvcs_dem/testimony_-_ma_ag_coakley.pdf.

(stating "Increasing numbers of mortgage foreclosures are not only depriving many Americans of their homes, but are also destabilizing property values and negatively affecting State and local economies as well as the national economy"); An Act Relative to Mortgage Foreclosures, Chapter 258 of the Acts of 2010 (mandating that before banks can foreclose, they must show that they engaged in a good-faith effort to negotiate a "commercially reasonable alternative to foreclosure.").

## IV. No Bond is Required

No bond is required if the Court allows Viera's request for injunctive relief. "[R]ule 65(c) explicitly allows the court discretion as to security." *Petricca Const. Co. v. Com.*, 37 Mass. App. Ct. 392, 400, 640 N.E.2d 780, 785 (1994). The purpose of the security is to assure indemnification for the costs, usually not including attorneys' fees, that may accrue during the period of the injunction if found to have been wrongfully issued. *O'Day v. Theran*, 7 Mass. App. Ct. 622, 625, 389 N.E.2d 444, 446 (1979). Here, no costs will be incurred by Wells Fargo if Viera's home is not foreclosed. In fact, by continuing to live in and maintain the home, she will be providing a benefit to Wells Fargo if injunctive relief is found to have been wrongly issued—that is, she will have been preserving the property at no cost to Wells Fargo.

## V. Conclusion

For the foregoing reasons, Wells Fargo must be enjoined from foreclosing on Viera's home, since it is in violation of its obligations to provide her with a permanent loan modification pursuant to is legal obligations under the trial modification agreement with Viera. A proposed Order is attached as **Exhibit C.**

Respectfully submitted,

Plaintiff,
Donna M. Viera,
By counsel,

Josef C. Culik (BBO #672665)
Culik Law P.C.
18 Commerce Way, Suite 2850
Woburn, MA 01801
Tel  (800) 962-9570
Fax (781) 780-2515
josef@culiklaw.com

September 21, 2011

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                                    SUPERIOR COURT

DONNA M. VIERA

      Plaintiff

v.                                              Civil Action No. 11-1783 C

WELLS FARGO BANK, N.A.

      Defendant

### AFFIDAVIT OF SERVICE

      Pursuant to Mass. Gen. Laws ch. 223A, § 6, I, Catherine L. Kowalczyk, certify that on today's date I mailed an original Summons and Order of Notice, Complaint with Exhibits, Scheduling Order, and Motion for Preliminary Injunction with Exhibits, in the above referenced matter to the following defendant via USPS Express Mail with signature confirmation no. EO 999 962 721 US.

      Wells Fargo Bank, N.A.
      Attn: John Stumpf, President
      101 N. Phillips Avenue
      Sioux Falls, SD 57104

      Signed under the pains and penalties of perjury on September 21, 2011.

Catherine L. Kowalczyk

 **UNITED STATES POSTAL SERVICE**

Date: 09/22/2011

JOSEF CULIK:

The following is in response to your 09/22/2011 request for delivery information on your Express Mail(R) item number EO99 9962 721U S. The delivery record shows that this item was delivered on 09/22/2011 at 09:12 AM in SIOUX FALLS, SD 57104 to K PETERSEN. The scanned image of the recipient information is provided below.

Signature of Recipient: 

Address of Recipient: 

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET#: **ESCV2011-01783-C**

RE:   Viera v Wells Fargo Bank NA

TO:   Jeffrey S Patterson, Esquire
Nelson Mullins Riley & Scarborough LLP
One Post Office Square
30th Floor
Boston, MA 02109-2127

_____

### NOTICE OF DOCKET ENTRY

You are hereby notified that on **10/11/2011** the following entry was made on the above referenced docket:

**Notice for Removal to the United States District Court filed by Wells Fargo Bank NA**
Dated at Salem, Massachusetts this 11th day of October, 2011.

Thomas H. Driscoll Jr.,
Clerk of the Courts

BY: Kevin Jones
Assistant Clerk

Telephone: (978) 687-7463